**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**Danny Guzman-Correa**

Petitioner

v.

**United States of America,**

Respondent.

CIVIL NO. 15-3041 (PG)
Related Crim. No. 07-290 (PG)

**OPINION AND ORDER**

Before the court is petitioner Danny Guzman-Correa's ("petitioner" or "Guzman-Correa") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docket No. 1), and the United States' (or the "government") opposition thereto (Docket No. 6). For the reasons explained below, the court **DENIES** petitioner's motion to vacate.

**I. BACKGROUND**

On July of 2007, a grand jury indicted Guzman-Correa and 94 other individuals for conspiring to possess and distribute narcotics within 1,000 feet of a public housing facility. See Crim. No. 07-290 (PG) (hereinafter "Crim."), Docket No. 2. The grand jury also indicted Guzman-Correa and other co-defendants for aiding and abetting the use or carrying of a firearm in furtherance of a drug crime. Id. According to the indictment, from January 2003 to July 2007, a violent gang known as "the Combo of Dr. Pila" (the "Combo") ran drug distribution points at several public housing projects located in Ponce, Puerto Rico and other neighboring areas. Id. The indictment deemed Guzman-Correa as one of the leaders of the conspiracy, stating that as a co-conspirator Guzman-Correa supplied the Combo gang with heroin and cocaine and later received the proceeds of the drug sales. Id. at pp. 11-13. Guzman-Correa pleaded not guilty and proceeded to trial.

Following trial by jury, on September 3, 2009, Guzman-Correa was found guilty of conspiracy to possess with intent to distribute narcotics in violation of 21 U.S.C. §§ 841, 846 and 860, and of aiding and abetting the possession of guns in furtherance of the drug-trafficking crime in violation of 18 U.S.C. §§ 2 and 924(c). See Crim. Docket Nos. 2911 and 3494. On November 12, 2010, petitioner was sentenced to life in prison on the conspiracy count and to 60 months on the gun count, to be served consecutively. Crim. Docket No. 3494.

Guzman-Correa appealed, but the First Circuit Court of Appeals affirmed his conviction and sentence. See Crim. Docket Nos. 4061 and 4073. On November 17, 2014, petitioner's conviction became final when his petition for certiorari was denied. See Correa v. United States, 135 S. Ct. 689 (2014).

On December 9, 2015, Guzman-Correa filed the motion to vacate pending along with an attached memorandum of law and statements from family members and friends in support thereof. See Docket No. 1. Guzman-Correa alleges he received ineffective assistance of counsel because trial counsel failed to: (1) advise him to plead guilty; (2) timely object to an alleged courtroom closure during jury selection; (3) prove that Guzman-Correa did not have two prior convictions; and (4) contest an alleged incorrect calculation of the drug quantities attributed to him. See id.

On May 6, 2016, the government filed its response in opposition to Guzman-Correa's motion. See Docket No. 15. First, the government argues that Guzman-Correa has procedurally defaulted on his courtroom closure claim and that he has not demonstrated the "cause" and "actual prejudice" required to excuse said default via an ineffective assistance of counsel claim. See Docket No. 14 at pp. 3-6. Second, regarding the plea agreement issue, the government submits that Guzman-Correa's "attorneys did what they are constitutionally required to do" when advising him not to take a plea deal. See id. at p. 9. Regarding counsel's inability to prove that Guzman-Correa did not have two prior convictions, the government submits that the claim lacks merit because counsel's unsuccessful trial strategy does not translate into ineffective assistance. See id. at pp. 8-11. Lastly, on the subject of Guzman-Correa's drug quantity claim, the government avers that the same is not subject to collateral review because it was already raised and settled on direct appeal. See id. at p. 11.

On November 1, 2016, Guzman-Correa filed a reply. Docket No. 20. The court had a difficult time understanding Guzman-Correa's arguments, but will nonetheless consider them below. In his reply, Guzman-Correa avers that the alleged complete courtroom closure that took place during the jury selection process constitutes a structural error that automatically establishes the prejudice needed to satisfy an ineffective assistance claim. See Docket No. 20 at pp. 2, 8. Citing a previous decision from the U.S. District Court of Puerto Rico, Guzman-Correa supports his complete closure allegation advancing that complete closures during jury selection processes were the norm in this district court. See id. at p. 3.

On September 10, 2017, the government filed a supplemental response to Guzman-Correa's reply. In short, the government avers that Guzman-Correa's claim cannot prosper because he did not make the required showing of prejudice that would enable him to circumvent a procedural default via an ineffective assistance of counsel claim. See Docket No. 21.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

Moreover, the Sixth Amendment guarantees that in all criminal prosecutions, the accused have a right to the assistance of counsel for their defense. U.S. Const. amend. VI. It has long been recognized that the right to counsel means the right to the effective legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970)). Where, as here, a Guzman-Correa moves to vacate his sentence on an ineffective assistance of counsel basis, he must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 466 U.S. at 686; see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (a petitioner seeking to vacate his sentence based on the ineffective assistance of counsel bears a very heavy burden).

For Guzman-Correa's claim to succeed, he must satisfy a two-part test. First, Guzman-Correa needs to show that "counsel's representation 'fell below an objective standard of reasonableness.'" Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010) (quoting Strickland, 466 U.S. at 688). Second, petitioner must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to him. See United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013) (citing Missouri v. Frye, 132 S.Ct. 1399, 1409 (2012)). Thus, petitioner must demonstrate both incompetence and prejudice. Failure to prove one element proves fatal for the other. See United States v. Caparotta, 676 F.3d 213, 219 (1st Cir. 2012). Nonetheless, the court "need not address both requirements if the evidence

as to either is lacking." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." Strickland, 466 U.S. at 697.

The right to effective assistance of counsel at the plea bargaining stage has been well established by the Supreme Court. See Padilla, 130 S. Ct. at 1480-81; see also, Hill v. Lockhart, 474 U.S. 52 (1985). "It has long been recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." Id. In advising a client during the plea bargaining stage, "[c]ounsel must predict how the facts, as he understands them, would be viewed by the court." McMann, 397 U.S. at 769. Even if counsel's prediction had been inaccurate, an inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel. See Knight v. United States, 37 F.3d 769, 775, (1st Cir. 1994).

"The Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected." Frye, 132 S. Ct. at 1402. Where the defendant claims, that counsel's advice led to the rejection of a plea offer and the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the Court. Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012). Subsequent determinations must also be made as to whether: 1) the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances; 2) the court would have accepted its terms; and 3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence than in fact were imposed. See id.

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

The Supreme Court has recognized that counsel has a "dut[y] to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." Strickland, 466 U.S. at 688. Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel. Padilla, 130 S. Ct. at 1480-81. It has long recognized that the negotiation of a plea agreement is a critical phase

of the criminal case for purposes of the Sixth Amendment right to effective assistance of counsel. Id. at 1486.

The Supreme Court has established that counsel will not be found ineffective solely because a certain trial tactic was unsuccessful. See McMann, 397 U.S. at 769-770. "Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance." United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983).

***i. Counsel's advice at the plea stage***

As previously noted, petitioner argues that his trial attorney was ineffective at the plea negotiation stage of criminal proceedings. See Docket No. 1 at p. 5. Guzman-Correa seems to posit that, instead of advising him to plead guilty, counsel insisted on going to trial by making an assurance he could not deliver on.[1] While the record shows that Guzman-Correa entered a plea of not guilty on all counts, see Crim. Docket No. 516, and proceeded to trial, the record is silent as to any plea negotiation between the government and petitioner at the pre-trial stage. Now, on collateral review, petitioner has not presented any evidence demonstrating that a plea offer even occurred. His Petitioner's allegations regarding counsel's advice are unsubstantiated and uncorroborated. Therefore, his first ineffective assistance of counsel claim fails.

***ii. Counsel's failure to prove one prior conviction***

Guzman-Correa also maintains that counsel was ineffective because he failed to prove that petitioner had one instead of two prior convictions. See Docket No. 1 at p. 8. In its response, the government correctly points out that, on direct review, the First Circuit held that Guzman-Correa's two prior drug felonies were separate criminal episodes that warranted automatic life sentencing upon conviction. See Docket No. 14 at p. 11 (citing United States v. Acosta-Colon, 741 F.3d 179, 210 (1st Cir. 2013)). The United States thus argues that because the First Circuit already decided this issue Guzman-Correa may not re-litigate it here. See id. The court agrees. It is well established that issues fully considered on direct appeal from conviction may not be re-litigated via collateral attack by way of motion to vacate. See Withrow v. Williams, 507 U.S. 680, 721 (1993). Furthermore, the court finds that trial counsel's failure

[1] Counsel allegedly assured petitioner that he would be able to prove one, and not two, prior convictions at trial.

to prove that Guzman-Correa had one prior conviction, by itself, does not constitute ineffective assistance within the meaning of the Sixth Amendment.

***iii. Counsel's alleged ineffectiveness at sentencing***

Guzman-Correa further claims that counsel was ineffective for failing to contest the drug amounts ascribed to him at sentencing. See Docket No. 1 at p. 8. He alleges that at trial, an expert witness falsely testified that each bag sold held 0.5 grams of heroin. See Docket No. 1-1 at p. 13. Petitioner acknowledges that, although he was part of a larger conspiracy, "he may only be held responsible for those drugs he personally handled as well as those that were reasonably foreseeable to him." Id. A review of the applicable case law indeed supports petitioner's argument. See, e.g. United States v. Rivera Calderon, 578 F.3d 78, 100 (1st Cir. 2009); United States v. Cruz–Rodriguez, 541 F.3d 19, 32 (1st Cir. 2008); United States v. Codarcea, 505 F.3d 68, 72 (1st Cir. 2007); United States v. Colon-Solis, 354 F.3d 101, 103 (1st Cir. 2004).

Notwithstanding, Guzman-Correa already raised and fully litigated this issue on appeal. Thus, he cannot challenge the matter on collateral review. At any rate, the First Circuit already determined that the trial court attributed particularized drug quantities to each defendant and that the quantities were proven beyond a reasonable doubt. See Acosta-Colon, 741 F.3d at 192 ("Even a quick look at the record reveals that the jury made individualized drug findings for each defendant beyond a reasonable doubt"). Consequently, petitioner's claim regarding trial counsel's ineffectiveness on the basis of the drug amounts ascribed at sentencing also fails.

**B. Courtroom Closure**

The Sixth Amendment right to a public trial extends to the jury *voir dire*. See Presley v. Georgia, 558 U.S. 209, 213 (2010) (per curiam) (citation omitted); United States v. Agosto-Vega, 617 F.3d 541, 545 (1st Cir. 2007). Although that right is not absolute, exceptions are few and far between. Agosto-Vega, 617 F.3d at 545. Prior to excluding the public at any stage of a criminal trial, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives…, and make findings adequate to support the closure." Waller v. Georgia, 467 U.S. 39, 48 (1984)(alteration in original); see also Presley, 558 U.S. at 213–214 (further

noting that when a defendant objects to a closure but does not offer alternatives, the judge must think of some on his own).

Guzman-Correa insists a complete courtroom closure took place during the jury selection process on August 7, 2009, the first day of trial. Before jury *voir dire*, Court Security Officers ("CSOs") informed Judge Juan M. Pérez-Giménez that a group of people had arrived in three school-type buses wearing custom printed t-shirts in support of Guzman-Correa. The situation was discussed at sidebar with the attorneys, at which point Judge Pérez-Giménez decided to exclude that specific group of spectators from the courtroom. See Crim. Docket No. 3461 at pp. 59-60. Guzman-Correa's trial counsel did not object to the exclusion:

> The court: All right. I've been informed by my CSO that the marshals informed him that three buses, school-buses type, have arrived here with persons who have T-shirts saying "Danny, we support you and we back you." I'm not going to allow that and I'm not going to tolerate it, and none of those persons are going to walk into the courtroom. They are going to be sent back and they are going to be –
>
> Mr. Entin: I don't think that's appropriate. I had no idea. Send them back.

Id. As the trial transcript demonstrates, the court only ordered the removal of the t-shirt wearers before selecting and empaneling the jury. Moreover, had there been a complete courtroom closure in effect, there would have been no need for the court to single out said supporters. Guzman-Correa's claim is thus unavailing.

Petitioner attempts to circumvent the lack of record support by arguing that the practice of closing the courtroom during jury selections was standard procedure in this District Court. See Docket No. 20 at p. 3. Guzman-Correa heavily relies on United States v. Negron-Sostre, 790 F.3d 295 (1st Cir. 2015), where the First Circuit determined that there had been a complete courtroom closure during jury *voir dire*. In that case, the Court relied on testimony from CSOs and attorneys that demonstrated a standard practice of closing the courtroom during jury selections. Nonetheless, this case alone does not establish an automatic presumption of complete courtroom closures during jury selection processes in Puerto Rico District Court proceedings. See United States v. Astacio-Espino, 150 F.Supp. 3d 153, 166 (D.P.R. 2015) (where Court Security

Officer's testimony sustained **practice of keeping the courtroom open** during *voir dire* processes at the instruction of the court).

Guzman-Correa tries to solider on with sworn statements from his trial and appellate attorneys and family members. The sworn statement from appellate counsel, for example, states that she once objected to a courtroom closure that occurred during the jury *voir dire* to no avail. However, her experience pertains another trial held in the District Court of Puerto Rico, and not Guzman-Correa's. See Docket No. 1-2 at p. 4. The other four sworn statements come from Guzman-Correa's family members and close friends who affirm, under penalty of perjury, that U.S. Marshals excluded them from the courtroom. See Docket No. 1-2 at pp. 16-39. The court has carefully reviewed the statements, but finds the facts detailed therein insufficient to show that a closure (be it complete or partial) occurred. As the trial transcript demonstrates, *supra*, the Judge Perez-Giménez only ordered the removal of the t-shirt wearers before selecting and empaneling the jury. Moreover, the record is devoid of any evidence that the court knew the complainants were seeking entry, but denied or intended to deny them access to the court.

But assuming *arguendo* that a complete courtroom closure did occur, and that Guzman-Correa's family and friends were indeed excluded during jury *voir dire*, the court must still determine whether Guzman-Correa is entitled to *habeas* relief via his ineffective assistance of counsel claim. Guzman-Correa maintains that the courtroom's complete closure during the jury selection process constitutes structural error. Thus, this court must address a case in which structural error doctrine intertwines with an ineffective assistance of counsel claim.

Certainly, the violation of the constitutional right to a public trial is a structural error. See Waller, 467 U.S. at 49-50 and n.9. The structural error inquiry applies when the alleged error is one that "affects the framework within which the trial proceeds," and not "simply an error in the trial process itself." Arizona v. Fulminante*,* 499 U.S. 279, 310 (1991). Cf. United States v. Gonzalez-Lopez, 548 U.S. 140, 148 (2006) (quoting Fulminante, 499 U.S. at 310) (noting that trial errors generally subject to harmlessness review are errors that "occurred during presentation of the case to the jury" and their effect may "be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt"). Guzman-Correa asserts that the structural error doctrine requires this court to

automatically vacate his sentence and order a new trial. See Docket No. 5 at p. 4.

However, the Supreme Court recently clarified the proper standard within which to evaluate an ineffective-assistance claim premised on counsel's failure to object to a structural-type error. Weaver v. Massachusetts, 137 S. Ct. 1899, 1910-12 (2017). Relevant to this case, the Court recognized that "while the public-trial right is important for fundamental reasons, in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." Id. at 1910. Now, when a defendant specifically raises a public-trial violation via an ineffective-assistance-of-counsel claim, a showing of prejudice is required. Id. at 1910-1912. In other words, demonstrating the existence of structural error does not automatically satisfy the Strickland prejudice prong.

For the sake of argument, the court will assume that the Strickland incompetence prong is satisfied because counsel "unreasonably" failed to object to structural error. However, to demonstrate prejudice, Guzman-Correa must still show a reasonable probability of a different outcome but for counsel's failure to object to the closure or that such failure by counsel rendered his trial fundamentally unfair. Weaver, 137 S. Ct. at 1910-1912.

After a careful review of Guzman-Correa's motion to vacate and other moving papers--making the aforementioned assumption in his favor--, the court finds that Guzman-Correa has neither alleged nor shown that he was actually prejudiced. Petitioner has also failed to demonstrate fundamental unfairness. The court thus concludes that even assuming that the alleged courtroom closure was a Sixth Amendment violation, said violation did not pervade the whole trial or lead to basic unfairness. See Weaver, 137 S. Ct. at 1910-1912 (finding that courtroom closure during *voir dire* process did not pervade the whole trial or lead to basic unfairness).

Consequently, Guzman-Correa's ineffective assistance of counsel claim on this basis necessarily fails.

**C. Evidentiary Hearing**

Guzman-Correa has requested an evidentiary hearing. Docket No. 1-1. The United States, in turn, believes that one may be necessary as to the courtroom closure claim. But evidentiary hearings in § 2255 cases are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an

evidentiary hearing is warranted. See Moreno–Morales v. United States, 334 F.3d 140 (1st Cir. 2003). A hearing "is not necessary when a § 2255 petition is inadequate on its face, or although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

In Guzman-Correa's case, even if the court deemed his petition as facially adequate, the fact of the matter is that the record belies his allegations. Having ruled that the Guzman-Correa's ineffective assistance of counsel claims lack merit, the court finds that a hearing is not warranted. Accordingly, Guzman-Correas's request is **DENIED.**

## IV. CONCLUSION

In short, the court concludes that Guzman-Correa failed to establish that trial counsel's performance fell below an objective standard of reasonableness or that the alleged errors on counsel's part produced "'a fundamental defect which inherently results in a complete miscarriage of justice….'" Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (quoting Hill, 368 U.S. at 428)). In so ruling, the court also takes into account the interest of finality of judgments and the costs and uncertainties associated with vacating petitioner's sentence.

Based on the foregoing, petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Docket No. 1) is hereby **DENIED,** and the case is **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

## V. CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued in the event that the petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, March 29, 2018.

*S/ GUSTAVO A. GELPÍ*
**GUSTAVO A. GELPÍ[*]**
**UNITED STATES DISTRICT JUDGE**

[*] Due to Judge Juan M. Pérez-Giménez's unavailability, the undersigned has agreed to attend the pending § 2255 motions, which can be readily resolved by virtue of the criminal case record.